DA 06-0155

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 294

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAN EUGENE HASTINGS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 05-0524
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nancy G. Schwartz, Attorney at Law, Billings, Montana

      For Appellee:

          The Honorable Mike McGrath, Attorney General; Ali N. Bovingdon,
Assistant Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

               Submitted on Briefs:  February 7, 2007

                     Decided:  November 8, 2007

Filed:

_____
              Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Dan Eugene Hastings appeals from the judgment and sentence entered by the Thirteenth Judicial District Court, Yellowstone County, upon his guilty plea to the felony offense of failure to register as a sexual offender. We reverse and remand.

¶2     The restated issue on appeal is whether the District Court erred by denying Hastings' motion to dismiss.

## BACKGROUND

¶3     In 1998, the youth court of the Seventh Judicial District Court, Dawson County, adjudicated then-16-year-old Hastings as a delinquent youth upon Hastings' admissions that he had committed acts which, if committed by an adult, would have constituted five felony offenses, including one offense of sexual intercourse without consent. The court committed Hastings to the Department of Corrections (DOC) for placement at the Threshold Program in Deer Lodge.

¶4     On February 24, 2000, shortly after Hastings turned 18, the youth court transferred jurisdiction of Hastings to the district court and placed him under adult supervision until age 25, based on the parties' stipulation that Hastings had not successfully completed sex offender treatment at Threshold, had not paid $3,625.52 in restitution and was at high risk to re-offend. In June of 2000, the district court entered an order revoking Hastings' "suspended sentence"—apparently referring to the transfer order—upon determining Hastings had violated conditions set forth in that order by the youth court. Among other things, the revocation order stated that "for each of the five (5) offenses, DAN

2

HASTINGS shall be committed to the [DOC] for a period of five (5) years with recommendation . . . for commitment to Pre-release if appropriate, upon the Defendant's compliance with the following conditions: 1. The Defendant shall be required to register as a Level II Sex Offender." The five-year commitments were to run concurrently. Hastings spent approximately four years in Montana State Prison, and was transferred in November of 2004 to Alternatives, Inc., a pre-release center in Billings. His commitment pursuant to the revocation order was entirely discharged on May 8, 2005.

¶5 In June of 2005, the State of Montana charged Hastings by Information in the Thirteenth Judicial District Court, Yellowstone County, with the felony offense of failure to register as a sexual offender "on or about May 9, 2005 to May 27, 2005." According to the supporting affidavit, Hastings had registered as a sex offender with the Yellowstone County Sheriff's Office on or about December 4, 2004, giving his address as Alternatives, Inc. in Billings. The affidavit further states a detective determined that after being "completely discharged from the sentence on May 8, 2005," Hastings had not returned to live at Alternatives, Inc., and had not changed his address with the Yellowstone County Sheriff's Office. In addition, the affidavit states the Billings Police Department arrested Hastings on May 22, 2005, on a charge of misdemeanor theft, and he gave the arresting officers an address subsequently learned to have been false. The detective discovered Hastings' true address on or about May 27, 2005 and arrested him there for failure to maintain registration as a sex offender. The supporting affidavit states that Hastings had been "convicted of sexual intercourse without consent" and "[a]s a result, the Defendant is required to register as a sexual offender."

3

¶6      Hastings moved to dismiss the charge.  He asserted that, because he had not been convicted of a sexual offense, neither Montana statutes nor the revocation order required him to register as a sex offender after the discharge of his sentence on May 8, 2005. After the State responded, the District Court denied Hastings' motion.

¶7      Hastings then pled guilty to the offense of failure to register as a sex offender, reserving the right to appeal from the District Court's denial of his motion to dismiss. The court entered judgment and sentence, and Hastings appeals.

## STANDARD OF REVIEW

¶8      The grant or denial of a motion to dismiss in a criminal case is a question of law. We review conclusions of law to determine if they are correct.  *State v. Villanueva*, 2005 MT 192, ¶ 9, 328 Mont. 135, ¶ 9, 118 P.3d 179, ¶ 9 (citation omitted).

## DISCUSSION

¶9      *Did the District Court err in denying Hastings' motion to dismiss?*

¶10     Title 46, chapter 23, part 5, and § 46-18-255, MCA, make up the Sexual or Violent Offender Registration Act (SVORA).  Section 46-23-501, MCA.  A "sexual or violent offender," defined as "a person who has been convicted of a sexual or violent offense," must register with law enforcement—by providing an address and, on some occasions, other information—at certain times.  Sections 46-23-502(7), -504, and -505, MCA.  In imposing a sentence on an offender convicted of a sexual or violent offense, the sentencing judge may not waive the registration requirements of SVORA.  Section 46-18-201(7), MCA.  With exceptions not at issue here, a "sexual offender" must register for life.  Section 46-23-506(1), MCA.

4

¶11 Before addressing the District Court's reasoning regarding the relevant statutes, we first note that Hastings is not challenging the Seventh Judicial District Court's authority to impose the registration requirement in the first instance. Indeed, he could not do so, since his time to appeal from the order imposing that requirement has long passed. Hastings' argument is that he was required to register only during his five-year commitment, which was discharged on May 8, 2005—before his alleged failure to register on or about May 9 to May 27, 2005.

¶12 In this respect, Hastings asserts that nothing in the revocation order authorizes a lifelong registration requirement under SVORA. The State responds that the revocation order reflects a "clear substantive intent" to impose the SVORA requirement. The language of the revocation order, as set forth above, reasonably could be interpreted in two ways: (1) setting forth the registration requirement as a condition for the District Court's recommendation to the DOC for prerelease; or (2) recommending Hastings be released to a prerelease program at the DOC's discretion, and requiring him to register during his participation in such a program. In either event, the absence of any mention of SVORA mandates a conclusion that nothing in the revocation order supports an intent by the Seventh Judicial District Court to trigger SVORA provisions.

¶13 In denying Hastings' motion to dismiss, the District Court provided several statutory and jurisprudential analyses. On appeal, Hastings' overarching argument is that the District Court erred in concluding he had been required to register pursuant to SVORA. We agree.

¶14 The District Court determined that, after Hastings' transfer to district court in

5

2000, the Seventh Judicial District Court had imposed a registration requirement as an "adult" condition of a new sentence and, therefore, SVORA required him to register for life. In interpreting a statute to discern legislative intent, we first look to the statute's plain language. If that language is clear and unambiguous, no further interpretation is required. *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, ¶ 11, 152 P.3d 1288, ¶ 11 (citations omitted).

¶15    Section 46-18-201(7), MCA, and the SVORA statutes require a "conviction" before SVORA registration requirements may be imposed. The statutes are unambiguous in that regard. Thus, because it is undisputed that Hastings' youth court adjudication did not constitute a "conviction" as contemplated in § 46-23-502(7), MCA, the SVORA registration requirements could not be imposed by a district court under those statutes. *See also* § 41-5-106, MCA.

¶16    The District Court also reasoned, however, that § 41-5-1513(1)(c), MCA, provided a means to "bypass[]" the conviction requirement so that SVORA could apply to adjudicated youths. Section 41-5-1513(1)(c), MCA, provides, in part, that "the youth court may . . . require a youth found to be a delinquent youth, as the result of the commission of an offense that would be a sexual offense or violent offense, as defined in 46-23-502, if committed by an adult, to register as a sexual or violent offender pursuant to Title 46, chapter 23, part 5." This language is unambiguous in vesting a youth court with the discretion to impose a SVORA registration requirement in an appropriate case. Here, however, it is undisputed that the youth court did not impose a SVORA registration requirement. Thus, while the District Court did not err in concluding that § 41-5-

6

1513(1)(c), MCA, provides a means for a youth court to "bypass" the general requirement for a conviction in SVORA, no such "bypass" occurred in this case.

¶17 Citing to statements regarding the purposes of SVORA set forth in *State v. Mount*, 2003 MT 275, 317 Mont. 481, 78 P.3d 829, the District Court also determined the basic policy of SVORA, and its incorporation into the Montana Youth Court Act in § 41-5-1513(1)(c), MCA, reflected the Montana Legislature's intent to extend the scope of SVORA to adjudicated youths. With regard to *Mount*, we need only say that it did not involve either a juvenile or a youth court adjudication. Thus, it has no application to the present case.

¶18 Moreover, in construing statutes, the function of the court is simply to ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted or to omit what has been inserted. *See State v. English*, 2006 MT 177, ¶ 61, 333 Mont. 23, ¶ 61, 140 P.3d 454, ¶ 61 (citation omitted); *see also Letasky*, ¶ 11. Nothing in § 41-5-1513(1)(c), MCA, the pertinent language of which is set forth above, even suggests a wholesale incorporation of SVORA into the Youth Court Act. Consequently, we conclude the District Court erred in construing the statutes at issue here by looking beyond their plain, unambiguous language.

¶19 The District Court also reasoned that, because Hastings had not been convicted and was not ordered to register by a youth court under § 41-5-1513(1)(c), MCA, the registration requirement condition was the "only method" by which the Seventh Judicial District Court could have ensured SVORA applied to Hastings. The problem, of course, is that unless Montana statutes permit the imposition of a SVORA registration

7

requirement, a court may not impose one. The District Court's apparent belief that SVORA registration was appropriate for Hastings does not translate into statutory authority for the Seventh Judicial District Court to impose it.

¶20 Finally, we address *Villanueva*, decided after the District Court denied Hastings' motion and advanced by both parties as authority for their respective positions. There, the defendant was adjudicated guilty of first degree rape in a Washington juvenile court in 1993 and several years later, after moving to Montana, was charged here with—among other things—failing to register as a sex offender. *Villanueva*, ¶¶ 3-6. The district court denied his motion to dismiss the failure to register charge. *Villanueva*, ¶ 7.

¶21 On appeal, we addressed a legislative amendment to the registration statute, making it applicable to "sexual offenders" sentenced or, as a result of such a sentence, under agency supervision in any state on or after July 1, 1989. *Villanueva*, ¶ 13. We concluded the defendant could not rely on the Montana Youth Court Act in relation to the definition of "sexual offenders"—which, as discussed above, does not encompass a youth adjudicated in a Montana youth court unless the youth court discretionarily imposes a registration requirement—to avoid registration here. We reasoned that, in the context of the amendment, a "sexual offender" was defined by Washington law, where his adjudication had occurred, not by Montana law. *See Villanueva*, ¶¶ 15-16.

¶22 Hastings asserts that, unlike the defendant in *Villanueva*, he was adjudicated under the Montana Youth Court Act and, therefore, may rely on its provisions distinguishing an adjudication from a conviction and leaving it to the discretion of youth courts to impose SVORA registration requirements in appropriate cases. *See* §§ 41-5-106 and -1513(1)(c),

8

MCA. In this regard, Hastings observes that Washington law, applicable to the defendant in *Villanueva*, mandates registration for all adults or juveniles "found to have committed" or "convicted of" a sex offense. *See* Wash. Rev. Code § 9A.44.130(1). The State responds that *Villanueva* stands for the proposition that a person's adjudication—as opposed to conviction—has no bearing on whether the person has a duty to register under SVORA, so Hasting's lack of a conviction is not a controlling factor. The State is wrong.

¶23 The 2001 legislative amendment to the SVORA registration statute discussed in *Villanueva* applies SVORA retroactively—to July 1, 1989—to "sexual offenders" as defined by the law of the state where the proceeding occurred. Only Montana law is at issue here. As discussed above, Hastings is not a "sexual offender" under Montana law because he was not "convicted," and the youth court did not "bypass" the conviction requirement. Therefore, we conclude SVORA does not attach to the condition in the revocation order and Hastings was not required to register for life—or at any time after his commitment was discharged on May 8, 2005.

¶24 We hold the District Court erred by denying Hastings' motion to dismiss. We reverse and remand for further proceedings consistent with this Opinion.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON
/S/ BRIAN MORRIS


Justice Jim Rice dissenting.

¶25  The Court has engaged in a hypertechnical reading of the Montana Youth Court Act and created a loophole between that Act and SVORA where none should exist. While any lack of clarity in the Act has since been resolved by the Legislature's amendment of § 46-23-502(7), MCA,[1] I do not believe those statutes ever allowed the result this Court reaches today.

¶26  The Court observes that "Hastings is not challenging the [District Court's] authority to impose the registration requirement in the first instance." ¶ 11. Oddly, the Court then addresses that precise issue and holds that the District Court had no such authority. ¶ 19. The Court's analysis of the issue, whether appropriate or not, is flawed.

¶27  The Court acknowledges that a youth court can "bypass" SVORA's general requirement of a conviction by requiring a youth adjudicated of a sexual offense to register in accordance with SVORA. However, the Court then reads SVORA in a way that allows *only* the youth court to order an adjudicated youth to register. I believe the District Court stood in the shoes of the youth court when supervisory responsibility was transferred and could thereby require Hastings to register pursuant to the youth court

---

[1]Section 46-23-502(7), MCA, previously defined a "sexual or violent offender" as "a person who has been convicted of a sexual or violent offense." That statute was amended by the 2007 Montana Legislature and now defines a "sexual or violent offender," under § 46-23-502(10), MCA, as "a person who has been convicted of or, in youth court, found to have committed or been adjudicated for a sexual or violent offense."

statutes, and thus SVORA. I see no basis to prohibit the District Court from ordering the same disposition allowed in youth court, and thus would hold that the District Court had authority to order Hastings to register pursuant to SVORA.

¶28 Because I believe the District Court had the authority to require registration, I also interpret those statutes as necessarily incorporating SVORA, thus requiring anyone registering under SVORA to do so on a lifetime basis. The sentencing order cannot be read in a vacuum to require registration only for the period of Hastings' confinement—by ordering Hastings to register, the SVORA statutes were incorporated into the sentencing order and required lifetime registration. Indeed, the registration requirement goes beyond the length of Hastings' sentence because it is not a punishment, but rather a regulatory requirement that is allowed to continue. *Mount*, ¶ 56. When the District Court required registration, SVORA applied and lifetime registration was required.

¶29 Hastings is trying to find a loophole between the Montana Youth Court Act and SVORA where none exists but by the Court's creation. Although the youth court chose not to order Hastings to register as a sex offender, when that option was exercised by the District Court it incorporated all of the SVORA requirements, including lifetime registration. Regardless of whether the District Court's holding is considered to have occurred under the youth court act or under the adult sex offender statutes, SVORA applied, and the lifetime registration requirement applied with it.

¶30 I would affirm.

/S/ JIM RICE

11